I don't think this case will be quite as exciting as what's been going on so far this morning. This is just an insurance coverage dispute. Oh, thank you very much, I forgot. Now I can see with my glasses not fogging up. My client bought, this is an insurance coverage dispute that arising from a loss that occurred as a result of a hail and wind storm. Now my client purchased the property, sought help from Liberty Mutual to provide coverage for the building, went to Liberty Mutual, and Liberty Mutual issued a policy through its subsidiary, Ohio Security Insurance Company, an all-risk policy covering the building for all risk. One policy period extended, it lapsed, a second policy period began, took about three or four months, and then a month period after Ohio Security had issued the all-risk policy, a hail and wind storm in question occurred. My client filed a claim, that claim was denied in its entirety. Litigation ensued, discovery ensued. During my expert's deposition, I think which is probably the highlight of the discovery, he was asked if it was possible there was prior damage that existed on the building at the time the hailstorm hit or right before the hailstorm hit. My expert answering honestly as anybody would have had to said it was possible. Not likely, not probable, answered it was possible that there was damage on the roof at the time the hailstorm hit. The defendants then based on this, largely on this testimony, moved for a summary judgment saying that the plaintiffs could not then segregate out the damages from the non-covered and the covered losses because my expert also testified in that deposition when asked if he could segregate out the damages that he, that possibly existed on that roof at the time from the damages that did occur, the expert testified he didn't know if he could or not. Now, your expert's report was very short on analysis of why he thought the so-called roof damage was that June 18th hailstorm, he just made a conclusion without really explaining why as compared to some of the other reports that were filed. Well, I think one thing to point out is that the other reports only came to the conclusion that there was no hail damage from the, there was a big dispute over whether hail occurred during that time period or not, on that date. It was denied by the insurance company, I guess your honors, because no hail occurred. It wasn't until later that this damage from the hailstorm, six or seven years, came up. But in the report, as I read it, it said that there was some sign of hail damage, but it was light and not enough to really damage the part of the roof that really caused it to leak, that's the membrane. So, I mean, I think the reports, as I saw them, did say there was some hail damage, but there was no sign on the roof that there was any heavy enough hail damage that would have caused that membrane to fail and allow the leaking. Your honor, actually, I think you're correct. That is what Haig Engineering said. That is what the experts hired by the insurance company said. There's no question that's what they said. That's why, that's one of the things that's kind of important here is that they didn't say there was a concurrent cause of the loss, and I'll get back to this in just a second. They said that there wasn't sufficient damage to cause the roof. They said, they denied it in its completely, in its, they denied the claim in its entirety. And I think that becomes very important. Whatever roof damage there was from that June 18 storm was within the $68,000 deductible. Well, that's, yes, your honor, that's what they did say. There was some damage to the HVAC systems that were on the roof. There was some other minor damage. That's kind of in the debate, though, because if they acknowledged there was some damage, but it was within the deductible amount, why isn't that the end of it? I mean, we're not even really to this whole concurrent cause proof argument. Well, your honor. Or your expert didn't really address all of that, address all of the points that they made about the prior damage. My expert addressed the point specifically that the so-called, or the cause of the loss, the loss, now not the damage, but the loss, was the hail storm of June and July. I would say hail storm of June 2018. That doesn't explain how the expert knew that. I mean, in other words, so if I had a leaky roof, and then there was a hail storm tomorrow, and I still have a leaky roof, you could have an expert that says, oh, the hail damage caused the loss, but didn't even know I had a leaky roof before that, because I'd never seen the roof before. No, that's not—I think he said— So, I mean, how do you, you know, how do you address the fact that what the roof looked like—I mean, I understand you're wearing tear art now, but that's a good one. But that's separate from the roof was already a disaster. It was 50 years old. It was full of goo. And then you have a hail storm. What difference does that make? And then you have an expert that goes, I say it was the cause, period. Why isn't that just a conclusory statement? Your Honor, because his report, his expert testimony was that he did examine the meteorological reports. He did inspect the premises three times. He did come out. He did participate in the Hague samples. He did all that. He was involved in all this. He actually just—but he says the roof might have had some damage before. He recognizes that. Anybody would have to. But why can't you just acknowledge that? Because, Your Honor, that's not what caused the loss. I think we're getting a little bit confused. I think the experts got it, and the courts have gotten confused in the past between loss and damage. Just because there's damage to a roof doesn't mean that there's actually a loss. For example, there's a cosmetic damage exclusion in this policy. If there's just dings on the roof and it hasn't damaged the roof, that's an exclusion. I mean, that's not covered. That would be an exclusion. Then that would obviously be the burden of proof upon the insurance company at that point to come in and segregate that damage out once it's an exclusion. There's no question about that. So I don't think there's a—that's the biggest part of the problem, I think, is the burden of proof has become for the plaintiff to start segregating out the damages just because the insurance company alleges it or raises the possibility. I think it's pretty clear now under Texas law that the burden of proof is on the insurance company for any exclusion. But now we're talking— It's kind of interesting. The notion—I mean, I know a lot about Texas insurance law. And the notion that all of these lawyers that spend their entire lives on insurance law would not notice that the law had changed on who had the burden of proof on exclusions strikes me as completely contrary to reality. Because, of course, they do know about it. I mean, we've had case after case after case where the issue of exclusion was a burden on the insurance company after the change in what was then Texas Insurance Code 2158. We even recognized it in a case in our court two years later after the 91 change. So the argument that you made—I mean, I'm always interested in, you know, Texas law and new Texas law and all that. But the notion that, well, we've had 30 years of insurance code attorneys who haven't noticed this, I find that a little hard to follow. Well, Your Honor, I don't know that its attorneys haven't noticed this. I don't know that they didn't argue it. I don't know they got buried in the insurance code. I don't know what the argument has always been. I know it has been addressed by one court of appeals in San Antonio. It's the only time I've heard the Wallace Court. It's the only court I know of that addressed it. And they addressed it— What do you do with our Lowen Valley case? I'm sorry? Our Lowen Valley case. What do you do with that case? I just didn't distinguish that. Your Honor, I would look at that case and I would say, I think the cases cited in it are—follow a prology of an obsolete doctrine that got misapplied. It's the only way I can really say it in all honesty. I can't really defend it. In the absence of an intervening Texas Supreme Court decision to the contrary— Yes, Your Honor. —or an en banc by us or maybe a change in the statute or something like that, in the absence of something of that nature, you know we have a rule of orderliness. We have to follow precedent. So tell me what—if you assume that we have to follow Lowen Valley, how can we rule in your favor? Lowen Valley I don't think necessarily addresses the same thing as in my case. Here's one. Lowen Valley, there was no expert hired by the plaintiff. There was nobody saying that the plaintiff— I'm sorry. There was two reports done by an engineering company hired by the defendant which they later recanted and said that was a typo in the two reports and that's what the plaintiff's relying upon. In that case, which is certain underwriters of London v. Lowen Valley, that particular case, the plaintiff didn't carry their burden of proof. And I don't disagree with that, Your Honor. There was nobody saying that the loss had occurred. They relied upon two reports that had later been changed because of that engineering company come up and said that was a typo in the first two reports. And so they had to come up with their own expert and they didn't do that. So Lowen—but certain underwriters of Lloyd v. Lowen does cite the proposition that the insured has the burden of proof to prove the covered loss. I do not dispute that and I don't disagree with that and I think that is the law. There's no question. I think it's when you break down a little bit further and you start breaking down that burden of proof that it gets confusing. Now all of a sudden it becomes the plaintiff's burden of proof to prove any possibility that the defendant raises. Your Honor, I could have gotten my expert or any— Well, they put on some proof. I mean, it's almost a little bit like in employment cases where you have a prima facie case, then you have a response, and then you have to go back. I mean, they did put on some evidence of damage from prior storms, events, 50 years, all of that. So I agree. If they simply said, well, you didn't prove—there could have been some other cause and you didn't prove there wasn't, I would agree that would go too far. But having shown their exclusion, having shown the potential that there was an exclusion, why then don't you have to show what was the damage? Okay. First off, I think we have to back off. It wasn't—that's where I think it gets a little confusing here and I don't mean to disrespect, but it's not an exclusion I don't think they're claiming. They did allege wear and tear at one time. If it is an exclusion, then the burden of proof is on them according to Chapter 55.554.002. There's no question. I mean, it says any exclusion, the burden of proof is the insurance company. But they're claiming— If someone had to say that, that there was wear and tear and so on, then tell me what happens next. Well, that would be their burden of proof to carry that forward, Your Honor, if that's true. If it's an exclusion, there's no question. It's their burden of proof to go in front of the jury. They would have to prove the damage at that point. They would have to prove the exclusion. The plaintiff does not have the burden of proof to prove their case. Nowhere under the case law has it ever been where the plaintiff has to prove the defendant's case. So do you agree that the concurrent causation notion is not a matter of exclusions? It's a matter of proving cause of your loss? Yes, Your Honor. Okay. And so given that, why do we even care about what was then 2158 and is now 554. Because the way the summary judgment was granted below, in the trial court below, the court granted summary judgment for us failing to allocate our damages, or segregate out the damages from the covered and non-covered losses. And first off, what we're trying to say in this case is, first off, there are no— this is not a concurrent cause case. Just because there was damage to the roof before doesn't mean that it had anything  There's no testimony to the cause. You still have to prove, regardless of any of this other stuff, that the amount that you're seeking in the case came from the covered loss. Yes, we do. And we did that. Our expert did that. Other than the one sentence from your expert that seems sort of conclusory, what evidence do you have on that? Well, Your Honor, our expert is what we're relying upon. The expert is— Your expert said that, in his deposition, that there was leakage before. He looked at the stains on the ceiling, and a great many of them were obviously old damage. But he didn't make any effort to attribute— Those repairs had been performed. That roof, that damage had been—that was a prior owner. That had occurred. That had been done, come in— It doesn't make any difference when it occurred. It's already been repaired. If there's—you know, you—like in Lowen Valley, there was some evidence in that case that the particular casualty caused the damage. And the panel, Satin Anderson, said that although the evidence of the non-movement must be believed in all inferences drawn and all that, but where the evidence is colorable or not significantly probative, or I could add, conclusory, and there's a mass of other evidence that shows that there were some other causes of the loss, then that triggers your burden to do the proration. Well, first, I would disagree with that there was other evidence of concurrent cause of loss. There was no other evidence of concurrent cause. Cause is different from loss and damage. Now, whether we say—just because if they've raised the issue of other prior damage, and, you know, that occurred before they ever insured it— If your expert had had some explanation or—but when he just might have one sentence saying this was the sole cause of the loss, and he had mentioned in his deposition that, yeah, it was leaking before, there was other damage to the roof, it was obvious from the ceiling, and then you bring in all these other reports that are very, very detailed, and they took portions of the roof and examined them in the lab. I mean, why doesn't that trigger your duty in proving your damages to show the proration? Yeah, all right. May I answer? Yeah, go ahead. Your Honor, I think that's all good points for a trial, and I think the defendant would definitely be able to argue all those things at trial. But to put the burden of proof on the plaintiff to allocate a damage and approve the defendant's case is just not the law, and it shouldn't be the law if it is. It shouldn't be the law. I mean—I'm sorry, I hope I answered your question. Well, you've saved time for rebuttals, and we look forward to that. All right. In the meantime, we need to hear from Mr. Tillman. Thank you. May it please the Court. Good morning, Your Honors. My first opportunity to argue in this Court, so I consider this a privilege to be here. I want to start off with the first appellate point that was made by appellants, which is that Section 554.002 does not apply to damages, or rather has been overruled somehow. The Texas law, the concurrent causation doctrine has been overruled by 554.002, and I know Judge Haynes just raised the issue of the predecessor to 554.002, which is 21.58. That actually has been specifically addressed, not only by this Court, but by courts in Texas, state courts in Texas as well. In New Hampshire Insurance Company v. Martek, this Court specifically addressed the issue of whether or not 21.58 overruled the concurrent causation doctrine and rejected that argument, specifically said that it does not. In fact, quoting from that case, it said, the essential question for purposes of this appeal is which party bears the burden of proving that the loss occurred within the policy period. Under Texas law, both before and after the amendment, proof that the loss occurred within the policy period is a precondition to coverage, and thus the insured responsibility. Well, that's what we're dealing with in this case. This is a unique case in that we had a snapshot of what this roof looked like prior to insuring the policy. The owner of this property had gone into bankruptcy and had sold it. The lender of the new owner required several inspections of this property, and so we had the benefit of February 2017 property condition reports, which identified significant issues with this roof, identified possible prior storm damage, identified active water leaks, all the same exact types of loss that led to what they're claiming required a roof replacement in this case. But the point is, the first point of their entire appeal is that the concurrent causation doctrine has somehow been overruled by the legislature, and it simply hasn't been. Both this court and Texas courts have addressed that issue and have specifically said, no, that is not the case. When you're proving, you first have to prove that the loss occurred within the policy period. If you put 55402 into Westlaw, then you're going to miss the cases on 2158, like New Hampshire, 993, F3rd, 1195, comma 1199. So I get the point. That's absolutely right. I went back and looked at what was this law before, because that's where the laws are going to be. I still see people citing Article 2121. Yeah, don't we all miss it? Sure, of course. And I'm not being critical of that, but there have been court cases that have addressed it head on, the specific point that they are calling a fresh expression. OK, but let me ask you, so I get that. I understand the concurrent cause issue. But what I'm wondering, I thought he made some good points about, what if I have a car that has some dings in it, and then somebody comes and crashes into it, do they get to say, well, we have to subtract the amount of the dings, despite the fact that I now crashed into your car, which, if it had been perfect, would also look exactly the same as it does now. The dings have added nothing to the harm caused by that. What's your answer to that sort of car ding argument? Sure, and I'm not critical of the car ding analogy. I use it with my clients all the time. I drive a pickup that had a dent in it before I just renewed my policy, and I don't expect my insurance carrier to pay for that old dent. I do expect my insurance carrier to pay for any new damage that occurs. The problem I see with his analogy with this roof is, he pictures what appears to be a relatively nice new car with one little scratch on the fender. The fender then gets bashed in, knocks the wheel off, and he's saying the insurance company shouldn't be able to avoid that damage. Well, two things. Number one, that little scratch shouldn't be too hard to allocate. You should be able to bring forth some kind of evidence if you needed to. So you're saying you should allocate it? I wouldn't allocate it. That's an extreme example, obviously. I think a better analogy is the car we all see driving down the road, where every panel on this car is a different color. This is an old car.  This is a 1972 roof. It's seen a lot of damage. We know from reports that this roof has been repaired multiple times, that it had active leaks. Despite the fact that that old car, with lots of damage on it, is damaged, you can still insure that car. And if you get run into in your front right quarter panel, that front right quarter panel should be paid for. Now what the insurance carrier doesn't owe for is the torn seats that were already there, the bashed-in bumper that had nothing to do with the accident. That's the type of situation... Getting back to the roof, if you own your house for longer than a few months in Texas or any of the Fifth Circuit states, Louisiana or Mississippi, you're going to have some rain. You might have some other issues. And so your roof isn't going to look quite as beautiful as it did the day that the builder handed you the green card from the county. I can't imagine that the insurance company doesn't have to pay if your roof then gets burned in a fire or something. You absolutely do. They don't get to deduct the fact that, well, you had three months of rain. Of course. I do not disagree with you on that point. And this goes a little to what Mr. Gray was saying about, well, what is the loss? Just because I have worn out shingles does not mean, or some wear and tear on my shingles. Maybe I go up on my roof and do some work and step on my shingles and there's some wear and tear, some mechanical damage. Those are all things that are excluded. But if those are not causing an actual problem with the roof, requiring replacement, I agree that that's not necessarily a loss. Isn't the exclusion really, in your hypo, if I walked on my roof and I therefore my deep tennis shoes caused a bunch of weird looking things on the roof as a result, I can't call up the insurance company and go, you have to come replace my roof because it's now full of all these little pieces of my tennis shoes. That would be the wear and tear argument. Correct. But if after I did that walking around on my roof and the roof doesn't look very good but it's still totally functioning beautifully, there's a fire that destroys half the roof, the insurance company needs to pay for that. Absolutely. You can't say, well, but we heard from your neighbors that the roof won't look that good so we're going to deduct the tennis shoe charges. I agree with you completely. Let me ask you this. Let's take, the roof is, well, this roof was 40 years old. Let's say, and it had some leaks. I mean, I think everybody agrees it had some leaks. Let's say a fire destroyed it, what would the insurance company have to pay? That question, I don't know the answer to. I would say there was still, in that case, the loss is the total destruction of the property. So my guess is you would still be paying for that entire building, separate and apart from any wear and tear. It didn't completely destroy it. Let's say. It's a completely different issue. In this case, what they're claiming is that the roof needed to be replaced due to a July 2018 or June 2018 hailstorm. We took the position that that's not the case. First of all, there are multiple other issues that predated this policy, which are leading to that roof needing to be replaced. The fire scenario is, again, an extreme example. And the reason I think it's different is because it completely destroys the building altogether. It doesn't matter if the roof is leaking water or not. You no longer have a building. That's a total loss. I think the insurance policy would have to pay for that entire building, not just. I don't know that they could take a deduction. But again, I don't know that I'm right on that. That's just my belief. They may have a depreciation deduction in the policy, or they may not. You can pay more and get a replacement policy, which is exactly why you're doing that. Because you realize your house kind of depreciates over time in terms of it's not as beautiful as that day one moment that I talked about. But you don't want to have to get paid under, you know, 1988 dollars if your house is completely destroyed in a fire and you have to rebuild it. And that's why you pay extra for that versus the depreciation. And they did pay extra for that. This is a replacement cost policy. And so, yes, depreciation would have been taken on this had it been paid. And that would have been recoverable depreciation once they actually go out and make the repairs. But in this case, the argument they're using just doesn't apply. The problem with this case is that they did nothing once their burden was triggered. Once we brought forth evidence, and sufficient, lots of evidence, right? We not only had their expert testifying that, yes, some of this hail damage I'm looking at very well could have been from other storms. As Judge Davis pointed out, there was lots of leaks that the expert didn't even include in his estimate because he said, I can't tell if these leaks are old or new. Well, that's the very thing they're replacing the roof for. They're claiming that it needs to be replaced because it's leaking. But yet their own expert can't say if the leaks are old or new. There's a thing in the record that shows whether or not the roof repairs that were $18,000 worth. There's nothing in the record that I'm aware of, Judge, that would show that those repairs were actually made. There were active leaks, we believe, prior to this storm. There is evidence in the record of that. Their own expert obviously did not believe all the repairs have been sufficiently made because he did not include damages from those active leaks. Is this really a concurrent cause case or is this really a no cause case? Well, for summary judgment purposes, it was a concurrent cause case. I mean, we took the position, we being Ohio Security, took the position that there was no covered damage. For purposes of summary judgment, however, obviously they disagree with that position. They took the position that all the damage was caused by the hail storm. So we moved for summary judgment simply on the concurrent causation doctrine saying, even if you're right that there is hail damage from the 2018 storm that damaged your property, there's lots of evidence that there's other damage that predated our policy. You, therefore, have the burden to segregate the damages. They did nothing to do so. They provided a conclusory affidavit. So we had a lot of concurrent cause cases right after Hurricane Katrina because there you had policies that would insure something but not everything. So if they insured wind, which there was clearly a lot with Katrina, but excluded floods or didn't cover floods, well, guess what? The hurricane is not sitting around being all that indistinguishable and it does both. It floods you and it winds you. And so how would you prove that? That's a pure concurrent cause kind of case. Here, I feel like it's just a little bit different. We don't have a hail storm and a flood or something like that happening at the same time. So explain to me really how this is truly a concurrent cause case. Well, most of the Katrina cases that you're dealing with, the policies actually had anti-concurrent causation provisions. And so in those cases, for example, wind is covered, flood is not. But they would also say something like, to the extent this loss is caused by flood, even in conjunction with a covered cause of loss, such as wind, the whole thing is excluded. And so the Katrina cases, typically there was no segregation because, frankly, segregation didn't matter. The anti-concurrent causation provision in those policies made segregation moot because if flood contributed at all, there's no coverage. This case is different. This case, to me, is on all fours with Hamilton Properties, which is also Judge Boyle, who wrote this summary judgment opinion, was also the district judge in Hamilton Properties that was affirmed by this court. Very, very similar situation where you have a hail storm which hits in North Texas. We get a lot of them. And there was evidence put on that there were multiple hail storms, a more significant sized hail that also hit this property prior to the policy incepting. Once they put that evidence on, Judge Boyle said, pursuant to the doctrine of concurrent causation, you must now segregate how much of the damage is from the old versus how much is from the new. That's what the burden was in this case. All they had to do, and they could say it's 100%, they just can't do so in a conclusory way. If you're going to say 100% of this loss is caused by the current storm, you've got to explain why that old damage was not part of it. But why can't we say that the expert opinion on their side at least raises a fact question for summary judgment? Well, we moved to strike his affidavit as a sham affidavit because it contradicts his deposition testimony. What Mr. Sandlin said, who's the public adjuster on the case, after testifying during his deposition that yes, it is possible that some of the hail damage up there was old, some was new. Did you do anything to try to determine how much of it was old versus new? No, he did nothing. Why didn't you include interior damage? There's active leaks in this property. Why didn't you include interior damage in your estimate? Uh, well, I couldn't tell. And after talking to the owners, some was old, some was new. I couldn't tell. So I didn't include any of that. Despite this testimony that there is clearly damage, damage that leads to the need to replace a roof, the very type of damage they're claiming is their loss. Despite all this evidence, he then conclusively says in his in his declaration, 100% of the need to replace the roof is due to the July 18th hailstorm. Well, how is that the case? Explain to us why 100%. Now, there are ways that you can describe that even even a roof that is old and worn out, my carrier has paid for those roofs. It can happen. New damage can occur. And he had said, well, let's see, how is he? I guess here's the question. How are you supposed to? So let's say that instead of representing the insurance company, you were suddenly the insurance lawyer and you're representing a plaintiff and you're trying to get an expert. The reality is you're unlikely to find an expert who had reviewed the roof before the hail. So how do you find that? How do you address that? How do you get that guy? How do you find that 100% or whatever the number is after the fact? Well, what we're what are we looking for in this expert report that's missing? I think one example that I have seen is where you have hail damage to a roof. This is a built up tar. This is a hard roof. It's got it's a gravel, gravel ballasted built up roof. It takes a lot of pretty big hail to damage that type of roof. Typically, I've had situations where experts have said, yes, there is hail damage that did mar the roof, but it wasn't causing leaks. The new hail damage that came actually caused leaks, caused water to infiltrate the insulation, and we now have a situation because of this new hail storm where you simply cannot replace the roof without or you cannot repair the specific areas of hail damage from the new hail damage without replacing the roof. It's impossible because there's now water throughout the whole roof. I've seen experts take that position as this is why 100% of the damage is from the most recent storm, and that was sufficient to raise a fact issue. I've also seen evidence where they were able to actually show that, yes, we did get the repairs done. And yes, we had leaks before, but we repaired all the leaks. Our piece case is a good example, isn't it, where they had mold in the house and they said the explanation for the mold could have been from a covered cause and a non-covered cause, and the expert gave an opinion. He said 70% of it was caused by, I think, the covered loss. I mean, at least that was enough to prevent some re-judgment. Sure, and I have seen experts attempt to put a percentage on it. Typically, what I see in most of these cases is they're trying to show that the entire loss was caused by the current storm. For obvious reasons. Counsel, can we go back to the car example? Sure. We don't have this issue as much in Texas and in the circuit, but if you walk around the streets in New England, let's just take Boston, for example. All of the cars have scratched up bumpers because that's the way they park the Boston bump, right? If you ever watch someone parallel park in Boston, they bump up in the front, they bump up in the back. I got a car, it's 10 years old, the bumpers are all scratched up. I walk out one day from my apartment and my bumper's on the ground because someone in Boston bumped it off when they were trying to parallel park in front of me. I go to my insurance company and say, I'd like to have my bumper replaced. I didn't do this one. I was asleep. And they say, well, who knows what was the but-for cause of the bump if you hadn't been doing it for 10 years, bumping, bumping, bumping. When I get in this dispute with my insurance company, can they put the proof on me to show how much of the bumping was me versus the guy who just one time knocked my bumper off? It's a legal question about the burden of proof and the allocation. Sure. I think you probably could. The insurance company could make me do that. I think the insurance probably could. Would they, as a practical matter with a bumper, take that position? I highly doubt it. Let me ask it this way. Is the legal rule you want in this case going to put that driver to the burden of showing how many bumps were his and how many bumps were the one that knocked the bumper off? I think technically, if you had a situation with a beat up bumper, now again, without having the benefit of reading the particular policy at issue in your scenario, there might be language in that policy that basically says, we're going to get you a new bumper, regardless of the fact that it's an old bumper. Okay? If you don't have that language, technically, if you had bumps in that bumper prior to the new bump or the new dents, I guess is the better way to say it, technically, the carrier only owes for the new dents. Now, it's a one piece bumper. Can you fix the one dent? Possibly. If you can't fix the one dent, you probably have to replace the whole bumper. In his hypo, the bumper was there all those 10 years. It was sitting there. Now, it's on the ground. Sure. So, that's different than just having a dent. It doesn't just look bad anymore. It's gone. And I didn't hear him say it was on the ground. I think you may have added a fact. Did you say it was on the ground? I apologize. I didn't hear that. I think in that case, that's my scenario where you probably could show that now 100% of the loss is covered because it's no longer functioning as a bumper. It's on the ground. That's different than this case where you have multiple areas of leaks, multiple areas. I'm sorry. My time is up. You want to finish your answer? I was just going to say, I think that is a different scenario. And if you had that, that would be my scenario I described where the expert says you can no longer repair this roof because this new event has caused damage to the extent where we can't repair the roof anymore. It has to be replaced. Thank you. All right. Thank you. We appreciate your argument. And we'll now hear the rebuttal. Your Honor, that's exactly what we have here. That bumper example is exactly what we have here. This is a roof that had been up there for several years. Liberty Mutual, our Ohio security, came in and insured it. Then a snow, then a hailstorm and windstorm hit that destroyed it and had to be replaced it. And the roof has to be replaced now. It didn't have to be replaced before that. There's no evidence that, there's no evidence anywhere in the record that it had to be hit. My expert came in and said the lost event, what caused the roof to have to be replaced, was the hailstorm and windstorm. So you're saying it's the bumper on the ground. It is the bumper on the ground. That's exactly what it is, Your Honor. The problem with this case has been a lot of the difficulty in getting into it is because the summary judgment was moved for on concurrent cause doctrine. And you're right. It's not really a concurrent cause case. And so I've, and the court granted summary judgment on us having to, because we didn't segregate out that pursuit. Answer about the sham declaration of your expert. What's your answer? Your Honor, our expert was asked during his deposition, was it possible that there was damage up there at the time of the hailstorm that was covered? Our expert said, possible. Was it probable? Can't say that. Was it likely? No, he didn't answer that. He asked, was it possible? I mean, I could have asked him if an alien aircraft answered, landed on the roof, you know, seven to six years before and caused damage to it. He would have had to say it's possible. Now my law partner is going to kill me for using that example because he turned out to, but, but yeah, I mean, an alien aircraft lands on that, on that roof and cause, and they come up and say, Hey, an alien aircraft. Was that possible that that happened? My expert would have to say it's possible. Even the United States let released footage of UFOs lately. I don't believe it's very likely, not probable, but possible. That's all my expert said. They never asked him what caused the loss in that deposition. That's why you don't see it in the record. That's why we submitted an affidavit afterwards saying, here's what caused the loss. It was the loss of the windstorm. That's what caused the roof to be replaced. It's not. I mean, I understand, I understand that part, but why does he not explain how he reached his opinion? Your Honor, I think he did explain in his affidavit three times. Unfortunately, that's not what the court ruled and that's not how this case played out. What this place, the way this case played out is the way it was filed. The summary judgment was filed a concurrent cause for felon to segregate after our expert said he couldn't segregate because he would be speculating. I mean, there's no way you can put any kind of mathematical certainty to some kind of percentage calculation on a possible damage that arose that nobody saw, that nobody knows was there for sure, but it's possible. My expert said that. So once he said that, they filed a summary judgment saying we couldn't segregate damages based on our expert's testimony. We filed an affidavit explaining why. What that meant. He didn't say it was obviously that damage existed or it was possible. He just said it was possible, but the loss was caused by this. He didn't go into his full report. He didn't go into everything. He never was asked about it in his deposition and that's why it kind of played out this way. Obviously, that there was a motion to strike. It was not ruled upon. It was countered. It was done. Our expert . . . So it was not stricken, so you'd say that we should consider it. No, it wasn't stricken and I don't think the court would have struck it either because in his response to the motion to strike, there was more evidence of what he'd done and what his involvement was, but that wasn't granted and that's not what this case is ruling from. What this case does, if this case stands the way it is, this case does put the burden of proof, as Judge Olin explained, on the person, on the insured to say how much percentage of their bumper had been damaged, what that percentage would be. This case would put the percentage on everybody with a roof that existed for over a week in Texas to prove what the damage was before because every roof in Texas has damage. There's no way. You leave it in that sun for a week, it's going to have some damage. It hails once or twice a year in Texas. It's probably got some cosmetic damage. It's got some things. All of a sudden, it's the plaintiff's burden of proof to prove under this case a percentage or an allocation, some way to segregate out something it doesn't even believe in. I mean, you're really asking experts to speculate and come up with a percentage that they don't even believe and the plaintiff doesn't believe in. We're talking about the functional capability of the roof, not just some damage. I mean, we're talking about a roof that was a functional ability of that roof to withstand leakage damage. All the evidence was that it was functional at the time of the hellstorm. It was leaking. I'm sorry? It was leaking. It was leaking prior before, before the repairs. There's all kinds of evidence before the insurance company even insured it. They came in and insured this roof after all those, after all that. It was a brand new insurance policy. They came in and insured this roof as being an insurable roof after that event, after all that stuff that happened, after the sale took place, after the repairs had already taken place. That's all stuff that happened way before. It's not even an issue in this case. The only thing that's an issue in this case is our expert's testimony of the possible damage. I'm sorry. Thank you, Your Honor, very much for your time. All right. Thank you both. We appreciate your arguments. The case is now under submission, and that concludes our oral arguments for today. We will be back in session tomorrow at 9 a.m.